Mr. John F. Yaitanes Chief of Police Belleair Police Department 901 Ponce de Leon Boulevard Belleair, Clearwater, Florida 33516
Dear Chief Yaitanes:
This is in response to your request for an opinion on substantially the following question:
 MAY TWO MUNICIPALITIES `CROSS SWEAR' THEIR RESPECTIVE POLICE OFFICERS AND AUTHORIZE SUCH `CROSS SWORN' OFFICERS TO EXERCISE POLICE FUNCTIONS AND POWERS AND ENFORCE THE LAW WITHIN THE JURISDICTION OF EITHER OR BOTH OF SUCH MUNICIPALITIES?
Your inquiry does not fully describe what is meant by the term `cross sworn' police officer, but I assume that it means that the officiers in question will take an oath of office in, or be `sworn in' by both municipalities, and that such officers will exercise police functions and powers and enforce the laws within the jurisdiction of each of the participating municipalities.
The police power to be exercised within the contemplation of the above plan is a governmental power inherent in and possessed by each of the involved municipalities. Each municipality's governmental powers and the exercise thereof is restricted to the disparate jurisdiction of each municipality. Section 2(c), Art. VIII, State Const., requires that the exercise of extraterritorial powers by municipalities be provided for by general or special law. See also, s 166.021(3)(a), (4), F.S., and cf., AGO 082-1 (concluding that absent statutory authority therefor, a municipality possessed no extraterritorial power to operate and maintain or contract for the operation and maintenance of a private utility system owned by a private nonprofit corporation for the use and benefit of persons and properties located outside its corporate limits and to utilize municipal personnel to carry out such operational functions and services).
Section 4 of Art. VIII, State Const., specifically provides:
 By law or by resolution of the governing bodies of each of the governments affected, any function or power of a county, municipality or special district may be transferred to or contracted to be performed by another county, municipality or special district, after approval by vote of the electors of the transferor and approval by vote of the electors of the transferee, or as otherwise provided by law.
The authority to transfer or contract out municipal functions or powers is tempered by the requirements in s 4, Art. VIII supra, that the transfer or contract initiate `[b]y law or by resolution of the governing bodies of each of the governments affected . . .' and that `approval by vote of the electors of the transferor and approval by vote of the electors of the transferee' be obtained. See, Sarasota County v. Town of Longboat Key,355 So.2d 1197 (Fla. 1978) (holding that a county ordinance transferring responsibility for performing certain governmental functions, including police services, from four Sarasota County cities to Sarasota County, was ineffective since it was not initiated by law or by resolution of governing bodies of each of the governments affected, nor separately approved by the affected municipalities' voters as required by the provisions of s 4 of Art. VIII, supra).Compare, City of Palm Beach Gardens v. Barnes, 390 So.2d 1188
(Fla. 1980) (which concluded that the procedural requirements of s 4, Art. VIII were not applicable to a sheriff who contracted to perform law enforcement services for a city within his county, since the sheriff was `not the county taxing entity contemplated by section 4' and that therefore approval by city and county electors of the contract was not required). The court in Barnes
distinguished Longboat Key, noting that the sheriff's contracting for services with a municipality was `clearly different from a municipality transferring or contracting away . . . its police powers to the county government', and for that reason the Barnes
case was not controlled by Sarasota County v. Town of Longboat Key, supra. Implicit in Barnes is the proposition that any such transfer of function or power or contract between two or more municipalities would be governed by s 4 of Art. VIII, State Const. See also, AGO 074-220 (concluding that under s 4, Art. VIII, State Const., two cities could, with approval of the electorate of each city, contract for the performance of law enforcement duties by the police force of one city in the other city, under the joint supervision and control of the police chiefs of each city); AGO 077-35 (concluding that if a municipality is to routinely utilize a police officer, who is employed by another municipality, there must be compliance with the provisions of s 4, Art. VIII, State Const., including the approval of the electorate of the municipalities).
Section 2(c), Art. VIII, State Const., permits the exercise of extraterritorial powers by municipalities when provided by general or special law, and s 4, Art. VIII in pertinent part alternatively provides that the transfer and contracts contemplated by s 4, in addition to the specific prescribed procedures, may be effected `as otherwise provided by law.' Section 23.1225(1), F.S., provides for:
 (1) A voluntary cooperation agreement, which is a written agreement between two or more law enforcement agencies which permits voluntary cooperation and assistance of a routine law enforcement nature across jurisdictional lines. The agreement shall specify the exact nature of the law enforcement assistance to be rendered, which agency shall bear any liability arising from acts undertaken under the agreement, and any other terms and conditions necessary to give it effect. There shall be no reimbursement to any law enforcement agency from any other law enforcement agency under a voluntary cooperation agreement. An example of a voluntary cooperation agreement is a joint city-county task force on narcotics smuggling.
Section 23.1231(3), F.S., requires that any agreement entered into pursuant to s 23.1225 be filed with the Division of Local Law Enforcement Assistance of the Department of Law Enforcement by each law enforcement agency which enters into such agreements within 7 days after entering into the agreement, and authorizes the division to promulgate standards and requirements for agreements to be entered into under s 23.1225(1). Section 23.127
provides for the powers, privileges, immunities, compensation and other matters concerning employees of a law enforcement agency when rendering aid outside such agency's jurisdiction pursuant to a written agreement entered into under s 23.1225. Each municipality entering into an agreement under s 23.1225(1) must assent to and will become bound by the terms and conditions of ss23.1225(1) and 23.127. I suggest that your agency consult with the Division of Local Law Enforcement Assistance as to whether the specific law enforcement assistance plan your town contemplates and needs comes within the purview of s 23.1225 and the standards and requirements for agreements to be entered into under s 23.1225
promulgated by that division. The governing body of each of the contracting municipalities will have to be a party to any such agreement or properly ratify the agreement and the liabilities, obligations, terms and conditions contained therein and imposed on one or the other or both of the contracting municipalities.
In summary, until legislatively or judicially determined otherwise, I am of the opinion that `cross swearing' of police officers by municipalities and exercise of police powers and functions in neighboring municipalities is authorized only upon compliance with the requirements of s 4 and s 2(c), Art. VIII, State Const.
Sincerely,
Jim Smith, Attorney General
Prepared by: Anne Curtis Terry, Assistant Attorney General